UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

CALIFORNIA INSTITUTE OF ARTS AND )
TECHNOLOGY INC., a California )
corporation, )
)
)
Plaintiff, )
)
)
vs. )
)
CAMPUS MANAGEMENT CORP., a Florida )
corporation, )
)
)
Defendant. )
)
)
)

# COMPLAINT

Plaintiff California Institute of Arts and Technology Inc. ("CIAT") sues Defendant Campus Management Corp ("CMC") and alleges as follows:

## INTRODUCTION

1. CIAT is a computer technical school providing students with vocational and career advancement programs. CMC styles itself as a provider of technology "solutions" for educational institutions, specifically, software "("SaaS") and related technical support.

2. In 2016 CIAT began searching for a software and related support to assist with its campus operations. It approached CMC. CMC represented that its SaaS was state of the art and would provide CIAT with a unified, turn-key "solution" to "fit the unique needs of CIAT" and the "distinctive need" of its students." In reliance on this and additional, more specific representations described below, CIAT entered into a "Master Agreement" with CMC for software and support in November of 2016.

3. CMC's representations were false. The "solution", its delivery, configuration, implementation, support and interface have not met the distinctive need of CIAT and its students. An entire year has passed since the "solution" was allegedly fully configured. Some of what was promised was never delivered, including "forms builder" and an "executive dashboard." Significant portions of that which was delivered never worked and the bulk of the remainder is still not fully-functional. Instead of serving as a solution for CIAT's challenges as a growing educational institution, CMC's SaaS and "support" have hindered and disrupted CIAT's operations. The "solution" is not what CMC represented and it is not what CIAT bargained for.

## THE PARTIES

4. CIAT is a corporation organized and existing under the laws of the State of California with its principal place of business in San Diego, California. It is deemed a citizen of California for purposes of 28 U.S.C. section 1332 (c).

5. CMC is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Boca Raton, Florida. It is deemed a citizen of Florida for purposes of 28 U.S.C. section 1332 (c).

## JURISDICTION AND VENUE

6. The Court has jurisdiction pursuant to 28 U.S.C. section 1332 (a) (2) based on diversity of citizenship of CIAT and CMC.

7. The amount in controversy, without interest and costs, exceeds $75,000.00

8. The Master Agreement contains a forum selection clause which provides that any controversy or claim arising out of or related to the Master Agreement will be maintained in the jurisdiction and venue of the courts sitting in and for the Southern District of Florida.

## FIRST CAUSE OF ACTION

### (Fraud in the Inducement)

9. CIAT repeats and realleges paragraphs 1 through 8 above as though fully set forth herein.

10. CMC represented to CIAT, both orally in multiple presentations and site visits and in its written "Solution Proposal" to CIAT that its "solution's power would result in better operational efficiency, improved data collection and reporting and most important, increased student success." It represented its software's open architecture would enable easy integration with CIAT's existing systems. It represented its CampusNexus Student software combined with CampusNexus CRM software would serve as CIAT's "hub" across the student lifecycle. It represented its "solution" would unite departments, campuses and workflows, giving CIAT a "360-degree view" of every department's interactions with each student thereby helping CIAT boost enrollment, retention and placement results. CMC represented CampusNexus as a dynamic solution which would grow and transform CIAT as new models and student needs evolved.

11. CMC's representations were false and, at the time they were made, CMC knew, or should have known of their falsity. When the "solution" went live in May of 2017, CIAT discovered its delivery, configuration, implementation, support and interface were all deficient and it did not perform as represented. Among other things, CMC's solution did not allow CIAT to recognize revenue, leaving it without accurate financials for several months. The solution did not integrate with CIAT's existing system, Canvas. Campus/Nexus CRM never worked properly. It was rigid and inflexible. It was not mobile friendly. Two-way proactive chat was not available after hours. Students could not leave messages. Hosted chat loaded only at a glacial pace. "Forms builder" and the "executive dashboard" were never delivered. Email marketing could be configured and edited only with great difficulty. Keyboard shortcuts did not work. Emails had to be sent from an alias rather than a user's account. Email users could not upload images to their emails. The email signature option did not work. In sum, operational efficiency, data collection and reporting and student success have all been hindered and CMC's "solution" did not help CIAT boost enrollment, retention and placement results.

12. CIAT justifiably relied on CMC's false representations in entering into a "Master Agreement for SaaS and Professional Services" and related agreements with CMC on

or about November 1, 2016.  True and correct copies of the Master Agreement and related agreements, along with certain amendments thereto are attached hereto as Exhibit "1".

13. CMC made the false representations to CMC knowingly, or, alternatively, in a grossly negligent manner, with the intent to induce CMC to enter into the Master Agreement and related agreements and reap substantial fees and other benefits for itself and to the detriment of CIAT.  Indeed, notwithstanding all of the solution's problems, the CMC representative in most frequent contact with CIAT has been its sales rep who spends her time trying to upsell CIAT on additional CMC products and services.

14. As a proximate result of CMC's fraud, CIAT has suffered damages in an amount in excess of $75,000 the precise amount to be proven at time of trial.

15. CMC's conduct justifies an award of exemplary damages

## SECOND CAUSE OF ACTION

### (Breach of Contract)

16. CIAT repeats and realleges paragraphs 1 through 8 above as though fully set forth herein.

17. CMC was obligated under the Master Agreement and related agreements to deliver, configure and implement accessible SaaS ("CampusNexus Student" and CampusNexus CRM") for CIAT and, in addition, provide maintenance and support services. It was required to use due care and act in good faith in its performance of the CMC SaaS and to provide service in a professional and workmanlike manner and in accordance with industry standards.

18. CIAT did all, or substantially all, of the essential things which the Master Agreement and related agreements required it to do except those which it was excused from doing.

19. All conditions required by the Master Agreement and related agreements for CMC's performance have occurred.

20. CMC breached the Master Agreement and related agreements by failing to provide accessible SaaS, failing to use due care and act in good faith in the delivery,

configuration and implementation in its performance of the SaaS and by failing to provide support services in a professional and workmanlike manner.

21.  As a result of CMC's breach, CIAT has suffered damages in excess of $75,000, the precise amount to be determined at time of trial.

### THIRD CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

22.  CIAT repeats and realleges paragraphs 1 through 8 above as though fully set forth herein.

23.  CMC was obligated under the Master Agreement and related agreements to deliver, configure and implement accessible SaaS ("CampusNexus Student" and CampusNexus CRM") for CIAT and, in addition, provide maintenance and support services. It was required to use due care and act in good faith in its performance of the CMC SaaS and to provide service in a professional and workmanlike manner and in accordance with industry standards.

24.  CIAT did all, or substantially all, of the essential things which the Master Agreement and related agreements required it to do except those which it was excused from doing.

25.  All conditions required by the Master Agreement and related agreements for CMC's performance have occurred.

26.  CMC breached the Master Agreement and related agreements by failing to provide accessible SaaS, failing to use due care and act in good faith in the delivery, configuration and implementation in its performance of the SaaS and by failing to provide support services in a professional and workmanlike manner.

27.  CMC's actions and omissions unfairly interfered with CIAT's receipt of the Master Agreement's benefits and its conduct did not comport with CIAT's reasonable contractual expectations under material aspects of the Master Agreement and related agreements.

28. As a result of CMC's breach of the implied covenant of good faith and fair dealing, CIAT has suffered damages in excess of $75,000, the precise amount to be determined at time of trial.

## FOURTH CAUSE OF ACTION

### (Rescission)

29. CIAT repeats and realleges paragraphs 1 through 8 above as though fully set forth herein.

30. CMC knew or should have known that its false representations to CIAT regarding its "solution" would have been material to CIAT's decision to enter into the Master Agreement and related agreements, for had CIAT known their false nature, CIAT would never have executed the Master Agreement and related agreements. CIAT's consent was given by fraud and/or mistake exercised by or with the connivance of CMC and thus CIAT hereby requests a rescission of the Master Agreement and related agreements. CIAT further requests that CMC restore all consideration given by CIAT so as to put the parties in the same position as if they had never executed the Master Agreement and related agreements.

31. CIAT has no adequate remedy at law because the "solution", its delivery, configuration, implementation, support and interface have not met the distinctive need of CIAT and its students. Significant portions of that which was delivered never worked and the bulk of the remainder is still not fully-functional. CIAT has thus suffered irreparable harm because instead of serving as a solution for CIAT's challenges as a growing educational institution, CMC's SaaS and "support" have hindered and disrupted CIAT's operations.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief)

32. CIAT repeats and realleges paragraphs 1 through 8 above as though fully set forth herein.

33. The Master Agreement contains a provision which gives CIAT the right to terminate in the event CMC materially breaches and fails to cure within ten days of the breach.

34. There is a bona fide, actual and present dispute between CMC and CIAT as to whether CMC materially breached the Master Agreement and related agreements, whether it failed to cure such breach and whether CIAT may terminate under the provisions of the contract.

35. There is thus a justiciable question as to the parties' rights and responsibilities and CIAT seeks declaratory relief related thereto.

## PRAYER FOR RELIEF

WHEREFORE, CIAT prays judgment against CMC as follows:

### ON THE FIRST CAUSE OF ACTION

1. For damages in excess of $75,000, the precise amount to be determined at time of trial, plus interest thereon;

2. For exemplary damages;

3. For costs of suit, including attorney's fees; and

4. For such other and further relief as the Court deems just and proper.

### ON THE SECOND CAUSE OF ACTION

1. For damages in excess of $75,000, the precise amount to be determined at time of trial, plus interest thereon;

2. For costs of suit, including attorney's fees; and

3. For such other and further relief as the Court deems just and proper.

### ON THE THIRD CAUSE OF ACTION

1. For damages in excess of $75,000, the precise amount to be determined at time of trial, plus interest thereon;

2. For costs of suit, including attorney's fees; and

3. For such other and further relief as the Court deems just and proper.

### ON THE FOURTH CAUSE OF ACTION

1. For rescission of the Master Agreement and related agreements and restitution of all consideration exchanged so as to put the parties in a position as if no contract had ever been executed;

2. For consequential damages in an amount in excess of $75,000, the precise amount to be determined at time of trial, plus interest thereon;

3. For costs of suit, including attorney's fees; and

4. For such other and further relief as the Court deems just and proper.

## ON THE FIFTH CAUSE OF ACTION

1. For a declaration that CMC materially breached the Master Agreement and related agreements and failed to cure that breach thereby entitling CIAT to a termination of the Master Agreement and related agreements;

2. For costs of suit, including attorney's fees; and

3. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

CIAT demands a trial by jury.

Dated: November 9, 2018

    Respectfully Submitted

    MALTZMAN & PARTNERS, P.A.

By: /s/ *Steve Holman*
Jeffrey B. Maltzman, Esq.
Florida Bar No. 0048860
jeffreym@maltzmanpartners.com
Steve Holman, Esq.
Florida Bar No. 547840
steveh@maltzmanpartners.com
55 Miracle Mile, Suite 300
Coral Gables, FL  33134
Tel: 305-779-5665 / Fax: 305-779-5664
*Attorneys for Plaintiff*